Sylvester WILLIAMS *v.* STATE of Arkansas

CR 86-26                                              711 S.W.2d 825

Supreme Court of Arkansas
Opinion delivered July 7, 1986

*Edward T. Barry*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Sylvester Williams was charged with possession of marijuana with intent to deliver, a felony. Williams was acquitted of that charge but the jury convicted him of the lesser offense of possession, a misdemeanor, and sentenced him to six months in jail and imposed a fine of $500. Williams argues several points on appeal but we address only one, the sufficiency of the evidence, because on that basis the case must be reversed and

dismissed. Our jurisdiction attaches under Rule 29(1)(a and c), interpretation and construction of Article 2, Sections 8 and 10, of the Arkansas Constitution and Ark. Stat. Ann. § 28-531 et seq. (Repl. 1979).

Deputy Sheriff Steve Spades and Walnut Ridge police officer Kenny Jones testified for the state. The substance of their testimony was they stopped Sylvester Williams and Charles Sweat on the night of February 15, 1984 for driving at a speed of 44 in a 35 mile an hour zone. Williams was driving and Sweat was seated in the right front seat. The car emitted a visible cloud of blue smoke which the officers attributed to marijuana. Sweat had a significant amount of marijuana scattered over his clothing and a brown paper sack on the floorboard in front of him contained 3.6 ounces of marijuana. Several roaches, one still "simmering," were found in the ash tray. No traces of marijuana were found on Sylvester Williams.

When a defense motion for a directed verdict was overruled Sylvester Williams testified that Charles Sweat had paid him $10 to drive him to Pocahontas in a vehicle borrowed from Williams's ex-wife. Williams took Sweat to the Sonic drive-in where Sweat got into a truck with two other men. Williams said in about fifteen minutes Sweat came back and they left. Williams saw nothing change hands between Sweat and the other men and he did not see a paper sack in Sweat's possession when he returned.

When they were nearing Walnut Ridge Sweat lit a marijuana cigarette. Williams said he told Sweat not to smoke that in his car and soon after that the police stopped them. Williams denied knowing anything about Sweat's reasons for going to Pocahontas or knowing anything about the sack of marijuana. He claims he first observed the sack when officers removed it from the passenger's side of the car. One officer's testimony placed it in the center of the floorboard, the other on the passenger's side between Sweat's feet.

On appeal from a judgment of conviction in a criminal case we affirm if there was any substantial evidence to support the verdict. *Pickens* v. *State*, 6 Ark. App. 58, 638 S.W.2d 682 (1982). Substantial evidence is defined as evidence which is of sufficient force that it will compel a conclusion one way or the other. It must be more than mere suspicion or conjecture. *Jones* v.

*State*, 269 Ark. 119, 598 S.W.2d 748 (1980).

We have held that when the premises where contraband is found are not *exclusively* subject to the control and dominion of the accused, some additional factor must be present linking him to the contraband. *Cary* v. *State*, 259 Ark. 510, 534 S.W.2d 230 (1976). The difficulty of proving possession where the defendant's control of the premises is not exclusive was described by the authors of 56 ALR3d 948, at page 953:

> As might be expected, no sharp line can be drawn to distinguish between the congeries of facts which will, and those which will not, constitute sufficient evidence of the defendant's knowledge of the presence of illicit drugs in a place to which he had access, but not exclusive access, and over which he had some control, but not exclusive control. Consequently, in the majority of cases where the defendant's conviction has been sustained, the courts have had to rely on certain evidential factors which, when added to nonexclusive possession by the defendant, supported a finding of the defendant's knowledge of the presence of and control of the drugs.

In *Osborne* v. *State*, 278 Ark. 45, 643 S.W.2d 251 (1982) and *Ravellette* v. *State*, 264 Ark. 344, 571 S.W.2d 433 (1978) we considered the quantum of proof necessary to sustain a conviction for possession of a controlled substance where the defendant did not have exclusive control of the premises on which the contraband was discovered. We held there must be some element of proof in addition to the joint control to link the defendant to the illegal matter. Quoting from the *Ravellette* opinion:

> When only circumstantial evidence is presented, as here, there must be some factor in addition to the joint control of the premises to link the accused with the controlled substance. *Cary* v. *State*, 259 Ark. 510, 534 S.W.2d 230 (1976). See also *Evans* v. *United States*, 257 F.2d 121 (C.A. 9 Cal. 1958). In other words it cannot be inferred that one in nonexclusive possession of premises knew of the presence of drugs and had joint control of them unless there were other factors from which the jury can reasonably infer the accused had joint possession and control.

In *Wilkes* v. *State*, 572 S.W.2d 538 (Tex. Cr. App. 1978) the rule was summarized:

> It has been consistently held in this State that possession means more than just being where the action is: the State must prove two elements: (1) that the accused exercised care, control, and managment over the contraband, and (2) that the accused knew the matter possessed was contraband. * * * Therefore, there must be additional independent facts and circumstances which affirmatively link the accused to the contraband in such a manner that it can be concluded he had knowledge of the contraband as well as control over it. . . ." See also *Rice* v. *State*, 548 S.W.2d 725 (Tex. Cr.App. 1977).

In a similar case, *State* v. *Bowyer*, 693 S.W.2d 845 (Mo.App. 1985), a Missouri Court of Appeals reversed and dismissed a conviction for possession of about three ounces of marijuana. The defendant, driving the car of his estranged wife, who was riding as a passenger, was stopped for speeding. The officer noticed a feathered clip dangling from the rear view mirror which he recognized as an instrument for smoking marijuana. The clip contained a dried roach. The officer opened the console between the two seats and removed a Tupperware container with a partially smoked marijuana cigarette. The driver was charged with possession and convicted in spite of the estranged wife's testimony that the defendant had not been in her car for six months, that the items belonged to her brother. In reversing, the court said:

> The mere presence of the accused on the shared premises where the drugs are found, however, does not suffice to convict for possession. Nor does proximity to the contraband, alone, even as to a substance in plain sight, tend to prove ownership or possession as among several persons who share the premises.

The court noted that where the conviction rests not on exclusive possession, but on shared possession of premises, an inference of possession of contraband found in an automobile does not arise from the fact of joint possession alone, but *only* from evidence of additional circumstances which inculpate the

accused. *Bowyer* at p. 849.

Here there was no evidence connecting the appellant to the marijuana other than the fact he was the driver of a borrowed car in which the marijuana was found. But even giving that fact and the proof in its entirety its highest probative value, *Pope* v. *State*, 262 Ark. 476, 557 S.W.2d 887 (1977), it fails to compel a conclusion that Williams was in constructive possession of the marijuana. There is no proof Williams had knowledge of its presence in the car prior to the point at which Sweat lit a marijuana cigarette shortly before being stopped.

The state urges there was marijuana in William's seat. But whether the car was equipped with bucket seats or a single seat is not revealed and the abstract tells us only that there was marijuana in "the seat." Even if that were intended to mean Williams's seat, it would not be so material to the issue of possession as to require a different result, in view of the testimony that traces of marijuana were "strung all over" the floorboard and Charles Sweat. This bit of evidence was too ambiguous to be of much value. Even if it could be said Williams had knowledge of the presence of marijuana, which arguably might be inferred from the circumstances, the proof would still be left wanting with respect to some additional element from which to conclude that Williams had control of the illegal substance. *Ravellette* v. *State, supra.* Nor do we attach any great significance to the presence of an undetermined number of roaches in the ash tray. Assuming they were marijuana (they were not produced at trial and were not tested) they could have belonged to Williams's ex-wife, or even to someone else. The one which was smoldering may have been the one partially smoked by Sweat, which was not otherwise accounted for in the abstracted testimony.

Obviously Williams may have known about the sack of marijuana, he may even have participated in its purchase, but that is conjecture rather than fact, and our criminal law does not permit a conviction supported by conjecture alone. *Redmon* v. *State*, 282 Ark. 353, 668 S.W.2d 541 (1984).

Reversed and dismissed.